JUSTICE GRAY,
specially concurring.
¶77 I concur in the Court’s opinion to the extent it addresses the issue before us in this case. That is, I agree that the challenged statutory amendments are unconstitutional because they violate a *391 woman’s right of procreative autonomy protected by Article II, Section 10 of the Montana Constitution and the State has not demonstrated a compelling state interest for infringing on that right. I cannot join in other parts of the Court’s opinion which, although scholarly written, are overly broad and far outside the scope of the issue actually before us. In concluding that Article II, Section 10 broadly guarantees each individual the right to make medical judgments affecting his or her bodily integrity and health in partnership with a chosen health care provider free from government interference, the Court’s opinion sweeps so broadly as to encompass and decide such issues as the right to physician-assisted suicide and other important health and medical-related issues which simply were not litigated in this case. I cannot agree that it is appropriate to address such matters in this case and, indeed, it is my view that much of the Court’s opinion is dicta.
¶78 I am particularly troubled by that portion of the Court’s opinion which states — without any analysis whatsoever — that the rights of personal and procreative autonomy at issue in this case also find protection in the individual dignity and equal protection rights set forth in Article II, Section 4; the inalienable right to seek safety, health and happiness in all lawful ways contained in Article II, Section 3; the religious and speech freedoms set forth in Article II, Sections 5 and 7; and the due process right contained in Article II, Section 17. That discussion is far beyond the scope of this case as presented and, in any event, is totally unsupported by the Court. While such thoughts appropriately might be included in a concurring opinion if supported by legal analysis, it is my view that they have no place in an opinion addressing and resolving the issue before us under the right to privacy contained in Article II, Section 10 of the Montana Constitution.
¶79 Finally, it is necessary to comment on those portions of the Court’s opinion which discuss the propriety of leaving the determination of standards for medical practice in the hands of the medical community — acting through the medical examining and licensing authorities. I generally agree with the Court’s discussion in those regards but I do not agree with any implicit notion therein that the Legislature has no place at all in the equation. It is important to keep in mind that the practice of medicine is a privilege, not a right, in Montana and that it is generally subject to legislative oversight in order to protect the health, safety, and welfare of the people of Montana. *392 See § 37-3-101, MCA. Indeed, the Montana Board of Medical Examiners (Board) is an entity created by the Legislature via § 2-15-1841, MCA, and given the powers and duties set forth in § 37-3-203, MCA, for the purpose of ensuring that medical licensees conform to appropriate standards of conduct and exercise the privileges granted to them “in the greatest public interest.” Section 37-3-302, MCA.
¶80 In discharging its oversight responsibility in the area of medical care for Montanans, however, the Legislature has expressly provided for the licensing of certified physician assistants who practice under the supervision of physicians pursuant to the terms of “utilization plans” approved by the Board. See §§ 37-20-101, 37-20-203, and 37-20-301, MCA. As provided by the Legislature, a certified physician assistant is “a member of a health care team, approved by the board, who provides medical services that may include examination, diagnosis, prescription of medications, and treatment, as approved by the board, under the supervision of a physician licensed by the board.” Section 37-20-401, MCA. The utilization plan requiring Board approval must set forth the scope of the physician assistant’s practice, and can be approved only if the physician assistant’s practice is within the scope of the training, knowledge, experience and practice of the supervisory physician and also within the scope of the training, knowledge, education and experience of the certified physician assistant. Sections 37-20-301(2)(c), (3)(b), and (3)(c), MCA.
¶81 In the context of the present case, I agree with the Court that, once the statutory requirements for licensure of a certified physician assistant and for approval of the utilization plan covering that certified physician assistant have been satisfied, the Legislature cannot indirectly intrude into a utilization plan setting forth the scope of practice for that physician assistant which has been approved by the medical authorities empowered by the Legislature to do just that. Here, the Board had approved Cahill’s utilization plan which permitted her to perform abortions, and it was inappropriate for the Legislature to substitute its judgment for that of the Board it created to oversee such matters involving the practice, training, knowledge, education and experience of medical personnel.
¶82 In summary, Ijoin in those portions ofthe Court’s opinion which address and resolve the issue actually before us. I do not join in those portions of the opinion which cast too wide a net and which implicitly *393 suggest that the Legislature has no role at all in matters relating to the health care to be provided to the people of Montana.
CHIEF JUSTICE TURNAGE joins in JUSTICE GRAY’S foregoing special concurrence.